STATE of Minnesota, Respondent,

v.

Jason Lee BERNARDI, Appellant.

No. A03–608.

Court of Appeals of Minnesota.

April 27, 2004.

Mike Hatch, Attorney General, St. Paul, MN, and Robert M.A. Johnson, Anoka County Attorney, Marcy Crain, M. Katherine Doty, Assistant Anoka County Attorneys, Anoka, MN, for respondent.

Daniel Guerrero, Meshbesher & Spence, Ltd., Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant challenges his conviction of first-degree assault—use of deadly force against a peace officer, arguing that there is insufficient evidence to convict him of that crime; that an out-of-court statement made by an unavailable declarant should have been admissible under the hearsay exception in Minn. R. Evid. 804(b)(5); and that the district court erred in prohibiting defense counsel from commenting in closing argument on the state's decision not to call certain witnesses. Because there is

sufficient evidence to support the conviction and the district court did not err in its rulings, we affirm.

## FACTS

Coon Rapids police officers Bradley Johnson and Daren Keasling went to appellant Jason Lee Bernardi's apartment in response to a report of domestic assault. When they arrived they could hear people shouting inside the apartment. Johnson knocked on the door and Bernardi's girlfriend, Marlena Cook, opened it. She was crying hysterically and stated that Bernardi had beaten her and had run out the patio door. Keasling pursued Bernardi while Johnson remained behind to speak with Cook.

Keasling saw Bernardi near a parked car and saw him open the door, get inside, and lock the doors. Johnson soon joined Keasling. The officers pounded on the car window and ordered Bernardi to unlock the doors and to get out of the car.

Bernardi ignored the officers and instead backed the car out of its parking space. Johnson moved to the front of the car and Bernardi began to drive toward him. Fearing for his life, Johnson drew his gun. As the car accelerated toward him, Johnson jumped onto the hood of the car and fired his gun several times into the windshield, seriously wounding Bernardi, who then lost control of the car. Just before the car collided with a parked car, Johnson jumped off. He sustained multiple injuries. Bernardi disagrees with these facts and claims that he never intended to run Johnson over and that he put his hands in the air to give himself up when Johnson shot him.

Bianca Dennie witnessed the incident. During an offer of proof, appellant's attorney claimed that Dennie stated to a defense investigator that

[s]he was in a position behind the vehicle as it traveled north in the parking lot, that the car began to roll forward, that the police officer jumped on the hood, that he was not in danger, [the car] was traveling approximately 15 miles an hour [when she] observed the driver raise his hands as if to surrender just prior to hearing and observing the gunshots [fired] into the windshield.

The state charged Bernardi with first-degree assault—use of deadly force against a police officer, and other offenses. Bernardi pleaded not guilty and demanded a jury trial.

Bernardi subpoenaed Dennie to testify at the trial but, by the time she was to be called as a witness, she had left the state. In lieu of Dennie's live testimony, Bernardi moved to introduce her statement to the investigator under the hearsay exception provided in Minnesota Rules of Evidence 804(b). The district court denied this motion.

The court also granted the state's motion to prohibit defense counsel from commenting in final argument on the state's failure to call as witnesses certain persons named on the state's witness list. These people were available to both parties and Bernardi chose to call them as witnesses.

The jury found Bernardi guilty of first-degree assault and not guilty of the other charges. Bernardi appealed.

## ISSUES

1. Was the evidence sufficient to convict appellant of first-degree assault—use of deadly force against a police officer?

2. Did the district court err in refusing to admit an out-of-court statement of an unavailable declarant under the hearsay exception in rule 804(b)(5) of the Minnesota Rules of Evidence?

3. Did the district court err in precluding defense counsel from commenting in closing argument that the state did not call certain witnesses on the state's witness list?

## ANALYSIS

### Sufficiency of the Evidence

Bernardi contends that the evidence was insufficient to support his conviction for first-degree assault because it did not show that he intended to use deadly force against a peace officer.

■ Under Minn.Stat. § 609.221, subd. 2 (2002), a defendant commits first-degree assault of a peace officer when he uses or attempts to use deadly force against the officer while the officer is performing official police duties. "Deadly force" is that degree of force that the actor should reasonably know creates a substantial risk of death or great bodily harm. Minn.Stat. § 609.066, subd. 1 (2002). "Great bodily harm" is any bodily injury that creates a high probability of death or which causes serious permanent disfigurement or permanent or protracted loss or impairment of the function of a bodily member or organ, or other serious bodily harm. Minn.Stat. § 609.02, subd. 8 (2002).

■ When an appellant challenges the sufficiency of the evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). This is especially true when resolution of the matter requires the assessment of conflicting testi-mony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988). A conviction may rest on the testimony of a single witness. *Caldwell v. State*, 347 N.W.2d 824, 828 (Minn.App.1984).

There was evidence that Bernardi looked at Officer Johnson as he drove the car straight toward him and accelerated as he did so. One civilian witness testified that, "It looked like the suspect was trying to hit the cop." There was evidence that Bernardi accelerated after Johnson jumped onto the hood of the car and that the car reached the speed of approximately 30 miles an hour for a few seconds while Johnson was on the hood.

Bernardi acknowledges that the requisite intent for the assault crime of which he was convicted can be established by showing that he reasonably should have known that his conduct created a substantial risk of causing death or great bodily harm. *State v. Ortiz*, 626 N.W.2d 445, 450 (Minn.App.2001), *review denied* (Minn. June 27, 2001). He also concedes that "[a] reasonable inference of guilt arises only if the Appellant accelerated with Johnson on the hood, traveling some distance before Johnson felt it necessary to shoot the Appellant."

The jury could have found that Bernardi drove the car at about 30 miles an hour for at least 120 feet with Officer Johnson lying on the hood. The jury could have concluded that Bernardi reasonably should have known that his conduct created a substantial risk that Johnson would fall off or under or in front of the car and could be run over by the moving vehicle, or strike

his head on the car, or strike his head on the pavement, any of which events could result in Johnson's death or great bodily harm. Because there was sufficient evidence to demonstrate these risks, the jury properly returned a verdict of guilty as to the assault charge, and we affirm.

*Hearsay Evidence*

■ Bernardi urges that the district court erred by excluding the hearsay statement of Bianca Dennie, which Bernardi argues was admissible under Minn. R. Evid. 804(b)(5).

■ "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that the appellant was thereby prejudiced." *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003) (citation omitted).

Bernardi does not contend that Dennie's out-of-court statement fits any of the express hearsay exceptions in rules 803 or 804. Rather, he argues that the statement is admissible under the so-called catchall provision of rule 804(b).

When a hearsay statement does not fit into any of the express hearsay exceptions, it might nevertheless be admissible in evidence if it has circumstantial guarantees of trustworthiness equivalent to those of the express exceptions. Minn. R. Evid. 804(b)(5). There are additional prerequisites to admissibility as well, but the only one on which the district court ruled and the only one addressed on appeal is the trustworthiness requirement.

The assessment of the trustworthiness of a statement offered under rule 804(b)(5) begins with a consideration of the word "equivalent." Only those statements that have "*equivalent* circumstantial guarantees of trustworthiness" to the guarantees

underlying the express hearsay exceptions may be allowed into evidence. Minn. R. Evid. 804(b)(5) (emphasis added). Some of the principles of trustworthiness evident in the express exceptions are spontaneity (rule 803(2)—excited utterance), contemporaneity (rule 803(3)—existing state of mind), motive (rule 803(4) statements for medical diagnosis and treatment), duty (rule 803(8)—public records), regularity (rule 803(6) business records), use and reliance (rule 803(8)—public records), oath (rule 804(b)(1)—prior testimony), and detriment to the declarant (rule 804(b)(3)—statements against interest).

Caselaw has identified other considerations for the assessment of equivalent trustworthiness. For example, these identified considerations include the voluntariness of the statement; the possibility for some reward or gain for the declarant; the presence or absence of firsthand knowledge as a basis for the statement; the presence or absence of corroboration, such as repetition of the statement; the degree of detail of the declarant's recollection of the subject of the statement; the identity of the recipient of the statement; time and place of the statement; and the opportunity or lack thereof for cross-examination of the declarant. *See State v. Stallings,* 478 N.W.2d 491, 495–96 (Minn.1991) (holding voluntariness of statements made, witness's character for truthfulness and honesty, relationship with defendant and government, motivation to testify, personal knowledge, and corroborating evidence support trustworthiness of statement); *State v. Daniels,* 361 N.W.2d 819, 830 (Minn.1985) (holding that statements made to several people, along with other indicia of reliability or with some detail as to the incident, indicate some reliability); *State v. Hansen,* 312 N.W.2d 96, 103 (Minn.1981) (holding statements made during police questioning or in unsupervised setting of

an official interrogation, "some time after the incident," not subject to cross examination, and that did not indicate firsthand observation of what was reported not untrustworthy, but that statements made with some evidence that witness was under threat or intimidation not to make statement may be trustworthy).

Because of Dennie's unavailability, defense counsel proposed to have William Gowin, an in-house investigator employed by defense counsel's law firm, testify as to a statement he took from Dennie, who was an eyewitness to Bernardi's episode with Officer Johnson.

According to defense counsel's offer of proof, Dennie was a resident of the apartment complex at which the incident occurred. She was in a position to see Bernardi drive the car and Johnson jump on the hood. Her testimony would have been "that the car began to roll forward, that the police officer jumped on the hood, that he was not in danger, it was traveling at approximately 15 miles an hour." The offer of proof further indicated that Dennie "observed the driver raise his hands as if to surrender just prior to hearing and observing the gunshots into the windshield."

Gowin interviewed Dennie four months after the incident. He did not take a verbatim statement but rather summarized in a report what he heard Dennie say. Dennie did not sign the statement, and it is not apparent from the record that she even had an opportunity to read it. The statement was not under oath and, obviously, Dennie was not subject to cross-examination about the statement.

There also was evidence that Gowin also took a statement from Marlena Cook but that she refused to sign it because she believed it contained inaccuracies.

We note first that it is likely that this issue involves double hearsay. If defense counsel intended to offer Gowin's memorandum either as an exhibit or through having Gowin testify from it, the content of that memorandum would be hearsay. Minn. R. Evid. 801(c). Thus, both Gowin's statement and Dennie's statement would have to meet some hearsay exceptions to be admissible. Minn. R. Evid. 805.

But even if defense counsel did not intend to offer Gowin's summary, we agree with the district court that Dennie's purported statements lacked circumstantial guarantees of trustworthiness equivalent to those of traditional hearsay exceptions. The alleged statement was not particularly fresh in time; it was taken by someone associated with one of the parties; it was not a verbatim statement but rather was the investigator's impression of what the witness said; and there is no way to be reasonably sure the witness would adopt the statement as being true and accurate. And accuracy is called into question because another witness (albeit likely a biased witness) denied the accuracy of a similar "statement" Gowin took from her. The Dennie statement falls far short of the type and degree of trustworthiness that would qualify it for admission under rule 804(b)(5).

*Failure to Call Witnesses*

■ The state moved in limine to preclude defense counsel from commenting in final argument on the state's failure to call certain witnesses on the state's witness list to testify. The district court granted the motion. Bernardi argues that ruling was error.

■ The general rule is that "no adverse inference may be drawn from a party's failure to produce evidence equally available to both sides." *State v. Swain,* 269 N.W.2d 707, 717 (Minn.1978). The district court has the authority to order

defense counsel to refrain from commenting on the prosecutor's failure to call a witness if the witnesses are equally available to both parties. *State v. Thomas,* 305 Minn. 513, 516, 232 N.W.2d 766, 768 (1975).

Not only were the witnesses equally available to both the state and the defense, defense counsel actually called the witnesses to testify. Thus, the jury saw and heard the witnesses, and they were subject to impeachment by either party. Minn. R. Evid. 607.

Apparently, defense counsel wanted to argue that an adverse inference could be drawn about what those witnesses would say because the state decided not to call them. But such an inference may be argued, if allowed at all, about witnesses who do not testify when it would be natural to expect one party or the other to call them. *See State v. Peterson,* 266 Minn. 77, 84, 123 N.W.2d 177, 182 (1963) (stating arguments as to adverse inferences may be allowed with sufficient foundation). This is not the case here. There is no merit in the contention that the court's ruling on the state's motion in limine was error.

## DECISION

The evidence was sufficient to support appellant's first-degree assault conviction and the district court did not err in excluding a hearsay statement or in prohibiting defense counsel from commenting in final argument on the state's failure to call witnesses available to both parties.

**Affirmed.**